470 So.2d 526 (1985)
POTASHNICK CONSTRUCTION, INC.
v.
LOUISIANA DEPARTMENT OF REVENUE AND TAXATION.
No. 84 CA 0477.
Court of Appeal of Louisiana, First Circuit.
May 29, 1985.
*527 Albert Dale Clary, Baton Rouge, for plaintiff-appellant Potashnick Const., Inc.
Art B. Haack, Baton Rouge, for defendant-appellee, La. Dept. of Revenue & Taxation.
Before GROVER L. COVINGTON, C.J., and LOTTINGER and JOHN S. COVINGTON JJ.
JOHN S. COVINGTON, Judge.
Plaintiff, Potashnick Construction, Inc. (Potashnick), appealed to the State Board of Tax Appeals (Board) for a redetermination of an assessment of sales tax made by defendant, Louisiana Department of Revenue and Taxation (State). After a hearing, the Board rendered judgment in favor of the State, but decreased the amount of the original assessment and denied penalties. Potashnick then filed a petition with the district court, seeking review of the Board's ruling. The State also appealed, asserting that the Board erred in not imposing a use tax in the full amount originally assessed. After a hearing, the trial court rendered judgment affirming the Board's decision. From that judgment, Potashnick alone appeals.
The essential issue is whether Potashnick is liable for sales or use taxes under LSA-R.S. 47:302(A) and 47:321(A).
We reverse.
The facts are undisputed. Potashnick, a Missouri corporation authorized to do business in the state of Louisiana, acts as a general contractor for construction projects. In 1978, Potashnick was involved in construction of the GM Truck Assembly Plant near Shreveport, Louisiana. To assist in the performance of this work, Potashnick arranged with Fabick Brothers Equipment Co. (Fabick), a heavy equipment dealer and also a Missouri corporation, for the delivery of four grader tractors. On June 22, 1978, in Missouri, Potashnick and Fabick executed agreements, characterized as leases, on each piece of equipment. Potashnick agreed to lease the equipment for *528 a minimum period of four months, for the sum of $15,000 per month for each grader tractor, plus payment of Missouri taxes on the rental amounts.
The equipment was shipped by truck from Decatur, Illinois, the place of manufacture, directly to the construction site in Louisiana. The shipping was arranged by Fabick, which subsequently billed Potashnick for the transportation charges. Fabick's invoice billing for these charges lists the shipping date as June 15, 1978. Potashnick used the equipment from June through December, 1978, paying monthly rental as agreed on the equipment. On December 27, 1978, Fabick billed Potashnick by invoice for the total purchase price of the equipment, deducting the amount paid on rentals for the previous six months and granting a trade-in allowance. Potashnick paid the balance due, plus Missouri sales tax, plus "time payment charges". Potashnick continued to use the equipment in Louisiana through 1979, until the GM project was completed, whereupon the equipment was removed from the state. Potashnick paid neither sales nor use taxes on the equipment to the state of Louisiana.
The Louisiana Department of Revenue and Taxation subsequently assessed Potashnick sales tax on the equipment, plus interest and a delinquent penalty. Potashnick objected and applied to the Board for a review of the assessment. The Board ruled in favor of the State on the ground that when the sale was consummated in December, 1978, the equipment was physically located in the state of Louisiana. However, the Board ordered that no penalty be assessed because it found Potashnick's failure to pay to have been in good faith. The trial court affirmed the Board's ruling without giving written reasons for judgment.
The first question presented for resolution is whether or not the transaction involved here was a sale at retail, under LSA-R.S. 47:302(A)(1) and 47:321(A)(1), giving rise to imposition of a sales tax. The statutes provide for the levy of a tax upon the "sale at retail ... in this state, ..." of each item or article of tangible personal property (emphasis added). "Sale" is defined by § 301(12) as "any transfer of title or possession, or both, exchange, barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property, for a consideration ...".
The record reflects some ambiguity in the nature of the transactions executed in June and December, 1978, between Fabick and Potashnick. However, the Board determined that the sale of the equipment took place in December, 1978, when Potashnick was billed the remainder of the total purchase price, and we find no manifest error in the Board's conclusion. Modern Homes & Equipment Co., Inc. v. Collector of Revenue, 422 So.2d 1237 (La.App. 1st Cir.1982), writ denied 429 So.2d 128 (La.1983). Thus, we must look at that transaction to determine if the sale took place "in this state", as the statute requires.
The State contends that the sale took place in Louisiana because Potashnick first received possession of the equipment in Louisiana. Potashnick, relying on the fact that invoices list the equipment as F.O.B. Decatur", contends that it took possession in Illinois through an agent, Fabick.
Assuming arguendo that we accept Potashnick's position that delivery (i.e., transfer of possession) took place in Illinois rather than in Louisiana, that delivery was incident to the contract of lease. We are concerned here with where transfer of possession took place incident to the contract of sale.
Since the equipment had been physically located in this state for six months prior to the transfer of title, clearly no literal transfer of physical possession took place incident to the sale. The statute in question fails to define the term "possession"; however, an argument might reasonably be made that the intent of the statute could embrace a meaning of "possession" other than that indicating actual physical control over an item or article of tangible property. See A. Yiannopoulos' *529 treatise on property, 2 Louisiana Civil Law Treatise § 211 (1980). Nevertheless, we feel that the better and more reasonable interpretation is that in this particular context, the term "possession" refers only to actual physical control over the property.
The statute thus requires transfer of title or transfer of physical possession in this state, neither of which taxable incident took place in this case within the state of Louisiana. Accordingly, Potashnick was incorrectly assessed sales tax under LSA-R.S. 47:302(A)(1) and 47:321(A)(1) on the purchase of the equipment in question.
In arguing against imposition of a sales tax, Potashnick admitted that it may alternatively be liable for use taxes under LSA-R.S. 47:302(A)(2) and 47:321(A)(2), but asserted that it is entitled to a credit under R.S. 47:303(A) for the amount of sales tax paid to Missouri.
We agree that use taxes are due under § 302(A)(2), which requires the levy of a tax upon each article of tangible personal property which is not sold but is brought into this state for use. Sabine Pipe & Supply Co. v. McNamara, 411 So.2d 1167 (La.App. 1st Cir.1982), writ denied 414 So.2d 1254 (La.1982). We also concur in Potashnick's claim that it is entitled to a credit under § 303(A), which allows a credit against the use tax imposed by the state of Louisiana to any taxpayer who proves previous payment upon the sale or use of the same tangible personal property to another state. The credit will not be granted unless the other state in question allows reciprocity in such matters, which requirement is satisfied in the instant case.
According to our computations, the amount of use tax which the State could properly assess Potashnick on the cost price of the four grader tractors is more than offset by the amount of sales tax previously paid to the state of Missouri on the equipment's purchase.
The State contends that Potashnick is not entitled to a credit because the payment of sales taxes to the state of Missouri was incorrect. We agree with the underlying premise of the State's argument, i.e., that § 303(A) authorizes a credit only for a legally owed tax paid to another state. However, we disagree with the State's contention that Missouri had no legal right to assess sales taxes on the transactions in question, which were clearly Missouri sales.
For the foregoing reasons, the judgment of the trial court affirming the ruling of the State Board of Tax Appeals is herein reversed at defendant-appellee's costs in the sum of three hundred four dollars and sixty-two cents ($304.62).
REVERSED AND RENDERED.