563 So.2d 445 (1990)
LOUISIANA NATIONAL BANK
v.
William S. SLAUGHTER, III, Linda Robison Slaughter, Barry J. Callari and Mary Stuart Arrington Callari.
No. 89 CA 0710.
Court of Appeal of Louisiana, First Circuit.
May 30, 1990.
*446 Walter O'Roark, Baton Rouge, for plaintiff-appellee Louisiana Nat. Bank.
Ralph Brewer, Baton Rouge, for defendants-appellants Barry J. Callari and Mary S. Callari.
Before COVINGTON, CARTER and ALFORD, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment granting summary judgment in a suit for deficiency judgment.

FACTS
On January 20, 1986, Louisiana National Bank (LNB) filed a petition for executory process, with appraisement, against William S. Slaughter, III, Linda Robison Slaughter, Barry J. Callari, and Mary Stuart Arrington Callari.[1] Pursuant to a writ of seizure and sale, the property was sold at a sheriff's sale to LNB on August 6, 1986.[2] The Slaughters and the Callaris did not oppose the sale by seeking injunctive relief or by filing a suspensive appeal. As the sale proceeds were insufficient to satisfy the principal indebtedness, on March 18, 1987, LNB filed an amended petition seeking a deficiency judgment against the Callaris to obtain the remaining balance, interest, and attorney's fees.[3] The Callaris answered LNB's petition, denying all allegations. The Callaris subsequently amended their answer, alleging certain defects in the authenticity of the evidence in the foreclosure proceeding, including the lack of a power of attorney granted by Linda Robison Slaughter and Mary Stuart Arrington Callari naming an agent or attorney-in-fact. The Callaris also alleged that the foreclosure was based upon an invalid appraisal and that, as a result of such invalid appraisal, the sale was invalid, which precluded LNB from obtaining a deficiency judgment.
On July 14, 1987, LNB filed a motion for summary judgment. Attached to its motion was an affidavit by Richard A. Erbland, vice-president of LNB responsible for collection of the indebtedness which was the subject of the instant proceeding. An affidavit, executed by Ronald W. Brown, vice-president of Premier Bank, successor of LNB, attesting to responsibility for collection of the subject indebtedness was subsequently filed. Both affidavits attested that the indebtedness by the Callaris totalled $155,055.41, plus interest and attorney's *447 fees, subject to a credit of $93,570.05.
A hearing on the motion for summary judgment was held on February 17, 1989. At the hearing, LNB introduced various documents including the hand note, the collateral mortgage note, the collateral mortgage, and the collateral pledge agreement, which were filed into evidence as exhibits P-1, P-2, P-3, and P-4, respectively. The Callaris introduced no evidence in opposition to the motion for summary judgment. On that same day, the trial judge granted LNB's motion for summary judgment and rendered judgment in favor of LNB and against the Callaris for $155,055.41, plus interest and attorney's fees, and for all costs, subject to a credit of $93,570.05.
From this adverse judgment, the Callaris appeal, assigning the following specification of error:
The trial court erred in granting a deficiency judgment by means of a motion for summary judgment without any documentary proof of two powers of attorney, any written and signed appraisal of immovable property foreclosed upon, or any written and signed promissory notes, mortgage or pledge agreement.
SUMMARY JUDGMENT
LSA-C.C.P. art. 966 provides, in pertinent part:
A. The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed.
. . . . .
B. ... The adverse party may serve opposing affidavits prior to the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
LSA-C.C.P. art. 967 provides, in pertinent part:
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
It is well settled that a motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits show there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Kerwin v. Nu-Way Construction Service, Inc., 451 So.2d 1193 (La.App. 5th Cir.1984), writ denied, 457 So.2d 11 (La.1984); Landry v. Brandy, 389 So.2d 93 (La.App. 4th Cir. 1980); Cooper v. Anderson, 385 So.2d 1257 (La.App. 4th Cir.1980), writ denied, 393 So.2d 738 (La.1980). The burden is upon the mover for summary judgment to show that no genuine issue of material fact exists, and only when reasonable minds must inevitably conclude that mover is entitled to judgment as a matter of law is summary judgment warranted. Frazier v. Freeman, 481 So.2d 184 (La.App. 1st Cir.1985); Asian International, Ltd. v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 435 So.2d 1058 (La.App. 1st Cir.1983). Under LSA-C.C.P. art. 967, an adverse party may not rest upon the mere allegations or denials in his pleadings when a motion for summary judgment is made and supported by affidavits. Manzella v. Terrebonne Parish Police Jury, 432 So.2d 414 (La.App. 1st Cir.1983).
On motion for summary judgment, it must first be determined that the supporting documents presented by the moving party are sufficient to resolve all material issues of fact; if they are not sufficient, summary judgment should be denied. It is only if they are sufficient that the burden shifts to the opposing party to *448 present evidence that a material fact is still at issue; only at this point may the adverse party no longer rest on the allegations contained in his or her pleadings. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980); Frazier v. Freeman, supra; Nathans v. Vuci, 443 So.2d 690 (La.App. 1st Cir.1983).
In certain instances, the failure of an adverse party to file counter-affidavits does not automatically entitle the moving party to summary judgment. Jewell v. Thompson, 386 So.2d 689 (La.App. 3rd Cir. 1980), writ denied, 393 So.2d 746 (La. 1980); Acme Refrigeration of Baton Rouge, Inc. v. Caljoan, Inc., 346 So.2d 743 (La.App. 1st Cir.1977). However, if the moving party has established both that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law, it is incumbent upon the adverse party to set forth specific facts showing that there is a genuine issue for trial. LSA-C.C.P. art. 967; Manzella v. Terrebonne Parish Police Jury, supra.
Summary judgments are not favored, and any reasonable doubt should be resolved against the mover. Dupuy v. Gonday, 450 So.2d 1014 (La.App. 1st Cir. 1984). In determining whether material issues have in fact been disposed of, any doubt is to be resolved against granting the summary judgment and in favor of trial on the merits. Sanders v. Hercules Sheet Metal, Inc., supra; Chaisson v. Domingue, 372 So.2d 1225 (La. 1979).
In First Guaranty Bank, Hammond, Louisiana v. Baton Rouge Petroleum Center, Inc., 529 So.2d 834 (La.1987), the Louisiana Supreme Court, on rehearing, overruled League Central Credit Union v. Montgomery, 251 La. 971, 207 So.2d 762 (1968), and set forth the requirements for deficiency judgment, as follows:
To obtain a deficiency judgment, the creditor first must affirmatively plead and prove the existence of the obligation giving rise to the debt, La.C.C. art. 1831, and the grounds of non-performance entitling him to maintain his judicial action. La.C.C. art. 1994. Further, he must aver and establish by evidence that the property was sold under the executory proceeding after appraisal in accordance with the provisions of article 2723 of the Code of Civil Procedure; Gordon Finance Co. v. Chambliss, 236 So.2d 533 (La.App. 2d Cir.1970), writ denied, 256 La. 869, 239 So.2d 364 (1970); Pickering v. Kinney, 205 So.2d 199 (La.App. 2d Cir.1968); and that the proceeds received were insufficient to satisfy the balance of the performance then due. La.C. Civ.P. art. 2771; La.R.S. 13:4106; 4107. The appraisal procedures of article 2723 require that prior to the sale, the property seized must be appraised in accordance with law, and the order directing the issuance of the writ of seizure and sale must have directed that the property be sold as prayed for. Other statutory law sets forth the procedures for written notices to the debtor and seizing creditor, the appointment of appraisers, the sheriff's appointment of an appraiser if a party neglects to do so, delivery of appraisals, oaths of appraisers, and the form of the appraisals. La.R.S. 13:4363-4365.
The debtor, on the other hand, may assert both negative and affirmative defenses against the deficiency judgment action. He may defend by demonstrating the creditor's failure to prove one of the aforementioned elements of his case or by rebutting the existence of such an element. Additionally, the debtor may assert that an obligation is null, or that it has been modified or extinguished, but in such a case the debtor must prove the facts or acts giving rise to the nullity, modification, or extinction. La.C.C. art. 1831; La.C.Civ.P. art. 1005.
* * * * * *
The Code of Civil Procedure and statutes require a creditor seeking to obtain a deficiency judgment to prove only that there is a deficiency due on the debt after the distribution of the proceeds of the judicial sale and that the property was sold under executory proceeding after appraisal in accordance with La.C.Civ.P. art. 2723. La.C.Civ.P. art. 2771. The legislated law does not *449 require a creditor to prove that he presented flawless authentic evidence in the executory proceeding in order to obtain a deficiency judgment or grant the debtor a defense to a deficiency judgment based upon the creditor's failure to do so.
On the other hand, the creditor may not rely on the executory proceeding to prove his right to a deficiency judgment. The creditor must prove by ordinarily admissible evidence the existence of the obligation, the deficiency due, and the judicial sale under executory proceeding after appraisal. Further, the creditor must prove his case in an independent ordinary proceeding, affording the debtor all of the rights of a defendant in an ordinary proceeding, including the requirement of personal jurisdiction and service of process. La.C.Civ.P. arts. 2644, 2772. (Emphasis added) (Footnotes omitted).
[529 So.2d at 842-843].
In First Guaranty, the court determined that objections as to the lack of authentic evidence or as to minor defects of form cannot be used to annul the sale of immovable property by executory process and that a creditor's failure, in a prior executory proceeding, to submit authentic evidence of a corporate resolution authorizing the corporation to place a mortgage on corporation-owned property did not constitute a valid defense to a creditor's subsequent action for deficiency judgment. See also Bank of LaPlace v. Millet, 545 So.2d 646 (La.App. 5th Cir.1989), writ denied, 550 So.2d 630 (La.1989); Commercial National Bank v. Steele, 542 So.2d 1154 (La. App. 2nd Cir.1989); Bank of Coushatta v. King, 540 So.2d 1020 (La.App. 2nd Cir. 1989).
In the instant case, the trial court correctly determined that all genuine issues of fact were resolved and that the evidence in support of the motion for summary judgment was sufficient. The existence of the Callaris' obligation was supported by the promissory notes and affidavits executed by the bank officers. The judicial sale under executory proceeding was established by the Sheriff's Sale and Act of Cancellation attached to LNB's amended petition. This document as well as the bank officers' affidavit demonstrated the credit to which the Callaris were entitled and the deficiency due as a result. Therefore, it became necessary for the adverse party, the Callaris, to file controverting affidavits or other evidence to establish that there existed genuine issues of material fact. Although the Callaris alleged certain defects in the foreclosure, including an invalid appraisal, they could not rest upon the allegations in their answer, but were required to introduce evidence to this effect. This the Callaris did not do, and, based upon the record, reasonable minds would inevitably conclude that LNB is entitled to judgment as a matter of law.

CONCLUSION
For the above reasons, the judgment of the trial court, granting LNB's motion for summary judgment is affirmed. The Callaris are cast for all costs.
AFFIRMED.
NOTES
[1] In the petition for executory process, LNB alleged that the Slaughters and Callaris were indebted to LNB for $155,055.41, plus interest and attorney's fees. LNB alleged that it was the holder of a promissory note (hand note), dated August 10, 1985, for $155,055.41 and of a promissory note (collateral mortgage note), dated June 3, 1981, for $210,000.00. The hand note was executed by Barry J. Callari and Mary Stuart Arrington Callari as solidary makers. The collateral mortgage note was executed by William S. Slaughter, III, individually and as agent and attorney-in-fact for Linda Robison Slaughter, and by Barry J. Callari, individually and as agent and attorney-in-fact for Mary Stuart Arrington Callari. To secure payment of the collateral mortgage note, William S. Slaughter, III, individually and as attorney-in-fact for Linda Robison Slaughter, and by Barry J. Callari, individually and as agent and attorney-in-fact for Mary Stuart Arrington Callari, executed a collateral mortgage on real estate located in East Baton Rouge Parish.
[2] The Sheriff's Sale and Act of Cancellation, which was attached to the amended petition as exhibit 5, shows that the property was sold to LNB for $100,000.00, "that being the amount of said bid, and EQUAL TO TWO-THIRDS OF THE APPRAISED VALUE." After payment of the costs, $93,570.05 was credited against LNB's claim against the Slaughters and the Callaris.
[3] The amended petition did not seek a deficiency judgment against the Slaughters.